**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**CAROLYN MILES**                                                        **PLAINTIFF**

**v.**                              **4:06-CV-00763-WRW**

**UNIVERSITY OF ARKANSAS SYSTEM**                          **DEFENDANT**

**ORDER**

Pending is Defendant's Motion for Summary Judgment (Doc. No. 72). Plaintiff has

responded (Doc. No. 82), and Defendant has replied (Doc. No. 85). For the reasons set out

below, Defendant's Motion is GRANTED.

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[1]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[2]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an

extreme remedy that should only be granted when the movant has established a right to the

judgment beyond controversy.[3]  Nevertheless, summary judgment promotes judicial economy by

---

[1]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[3]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

preventing trial when no genuine issue of fact remains.[4]  I must view the facts in the light most favorable to the party opposing the motion.[5]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[6]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[7]

## II. BACKGROUND

The University of Arkansas Medical Science Campus, a campus of the University of Arkansas, offers a Clinical Pastoral Education ("CPE") program.[8] The CPE program provides both ministry for patients at the UAMS medical center and their families, and education and

---

[4]*Id.* at 728.

[5]*Id.* at 727-28.

[6]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[7]*Anderson*, 477 U.S. at 248.

[8]Doc. No. 74. Defendant filed, as required by Local Rule 56.1, a statement of material facts in connection with its Motion for Summary Judgment. *Id*. Plaintiff also filed a statement of facts, but did not controvert many facts set out by Defendant. Doc. No. 84. The facts set out by Defendant, but not controverted by Plaintiff, are deemed admitted under Local Rule 56.1, which, in relevant part reads: "[a]ll material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."

training for hospital residents.[9] Defendant employed Plaintiff as a hospital chaplain resident for the CPE program on September 6, 2005.[10] Plaintiff was also admitted into the CPE program.[11] After Plaintiff completed the first unit of the CPE program, she was informed that she was being dismissed from the program.[12]

During her time at the CPE program, Plaintiff observed alleged behavior that she thought violated employment, program, and ethics standards.[13] Plaintiff alleged that another chaplain, who suffered from multiple sclerosis, was being discriminated against based on her disability.[14] Plaintiff also believes Defendant discriminated against participants based on race, religion, and sex. In connection with race, Plaintiff alleges that Chaplain Buck made comments about African Americans.[15] Plaintiff alleges that Chaplain Buck said, "Oh, all black people want to be light skinned."[16] But, Plaintiff said that she did not feel that Chaplain Buck treated her differently because she is African American.[17]

---

[9]Doc. No. 74.

[10]Doc. Nos. 74, 84.

[11]Doc. Nos. 74, 84.

[12]Doc. Nos. 74, 84.

[13]Doc. No. 83.

[14]Doc. No. 83.

[15]Doc. No. 83, Ex. G, 37-39.

[16]Doc. No. 83, Ex. G, 37 at 10-12. Plaintiff then explained the context in which Chaplain Buck's comment was made. Doc. No. 83, Ex. G. 37-38. During a group meeting, there had been a discussion about different experiences by the African American participants based on the shade of their skin. *Id*.

[17]Doc. No. 83, Ex. G., 39 at 11-15.

In connection with religious discrimination, Plaintiff stated she "felt that there was . . . an ethic Catholic virus" that manifested itself in the form of comments from Chaplain Buck[18] Chaplain Buck allegedly said that collars and vestments were crutches, that prayer books prevented spontaneity, and allegedly told another chaplain that "when black people asked for a service, they mean they want you to pray for 20 minutes" and that the other chaplain "needed to go to a black church to learn how to pray."[19]

With respect to discrimination based on sex, Plaintiff alleges that Chaplain Buck and another chaplain made disparaging comments about women.[20] Plaintiff gave the following specific examples of disparaging comments: (1) during a group meeting, after Plaintiff told the group about a problem she was having with a stalker, Chaplain Buck allegedly asked Plaintiff what Chaplain Terry would have to do to make Plaintiff angry, and Chaplain Terry allegedly asked "if I stalked you, would that make you angry?" and (2) after Chaplain Buck and Chaplain Terry overhead part of a conversation that led them to question Plaintiff's sexual orientation, Chaplain Buck and Chaplain Terry allegedly asked Plaintiff what is the one thing about her that she doesn't want anyone to know.[21] Plaintiff alleges that there were other disparaging remarks, but she could not think of other specific examples.[22]

---

[18]Doc. No. 83, Ex. G, 35 at 5-6.

[19]Doc. No. 83, Ex. G, 35 at 10-25.

[20]Doc. No. 83, Ex. G, 41-43.

[21]Doc. No. 83, Ex. G, 41-42 at 23-13.

[22]Doc. No. 83, Ex. G, 45 at 3.

4

Plaintiff complained to her colleagues, Chaplain Buck (the program director), and Chaplain Hull (Chaplain Buck's replacement) about the behavior she perceived as discriminatory.[23] Plaintiff alleges that after she complained, Defendant terminated her employment, denied her credit for one unit of CPE, did not allow Plaintiff to continue in the CPE program, did not give Plaintiff a housing allowance that was allegedly given to all other chaplain residents, allowed colleagues to harass Plaintiff, and increased Plaintiff's workload.[24]

Chaplain Buck and others in the CPE program had reservations about Plaintiff as a program participant. Chaplain Buck asserts that there were problems with Plaintiff as a participant of the program almost from the beginning.[25] Chaplain Buck alleges that she did not properly participate in group sessions, was particularly angry towards Chaplain Terry, the head resident, and that Plaintiff would not focus on herself in one-on-one meetings.[26] Early on in the program, Chaplain Buck suggested to Plaintiff that she may not be suited for the CPE program.[27]

Other program participants allege that Plaintiff disrupted the program, and was confrontational and defiant.[28] Plaintiff was also described as manipulative.[29] Another participant wrote about Plaintiff: "I learned from her that you can not force someone to participate in a

---

[23]Doc. No. 83, Ex. G.

[24]Doc. No. 2.

[25]Doc. No. 72, Ex. 1.

[26]Doc. No. 72, Ex. 1.

[27]Doc. No. 83, Ex. G, 87 at 16-23.

[28]Doc. No. 72, Exs. M, N.

[29]Doc. No. 72, Ex. H.

learning experience if they do not choose to. I wonder why she bothered to joined [sic] the CPE group?"[30] Another participant wrote that Plaintiff "has resisted learning throughout the unit."[31] A third participant wrote that Plaintiff "has in my estimation no desire to learn. Her defiance and disrespect for the program cannot possibly go unnoticed by me."[32]

    Plaintiff filed a Charge of Discrimination with the EEOC alleging that Defendant retaliated against her in violation of Title VII.[33] Plaintiff claims that during her employment she challenged the program Director's and the Head Resident's stereotyping of individuals based on

---

[30]Doc. No. 72, Ex. H.

[31]Doc. No. 72, Ex. I. The same participant also wrote
I am sorry that [Plaintiff] has suppressed so many of her emotions, because she has cheated herself out of some valuable learning. I realize now why she intimidates me. It's because I can't figure her out -- there are no emotion I can touch to understand who she really is.

[32]Doc. No. 72, Ex. J. This participant also wrote: "[s]he has on several occasions by asked by [Chaplain Buck] has she learned anything from what others have said to her regarding her noncompliance. Her response on each occasion has been a 'No' or 'Nothing.' The participant continued: "[w]hile some learning has taken place I continue to resound this statement once again, 'She has basically wasted my time and hers.' [Plaintiff] would benefit by exploring her anger as well."

[33]Plaintiff filed the Charge No. 439-2006-00952 on May 1, 2006. The Charge reads:
I had worked for the above-named employer since September 1, 2005 in the Clinical Pastoral Education program. During my employment I challenged the methods used by the Director and the Head Resident in regards to stereotyping people in regards to ethnic background and harassing individuals with disabilities. After I challenged the methods I was denied housing allowance and On November 18, 2005, I was discharged from the program and denied credit for the program. I was never given a reason for why I was denied the housing allowance. I was told that I was being asked to leave because I would not benefit from the program. I believe I was denied the housing allowance and discharged from the program in retaliation for complaining of the discriminatory practices used in the program in violation of Title VII of the Civil Rights Act of 1964, as amended.

ethnic background, and their harassment of disabled individuals.[34] The EEOC issued a right to

sue letter on May 10, 2006.[35] Plaintiff brought suit against Defendant alleging that she had been

discriminated against under Title VII.[36]

## III. DISCUSSION

Plaintiff brought suit under Title VII, alleging Defendant retaliated against her for her

complaints of mistreatment of a disabled employee, and for complaints of "other employment,

program and ethics violations . . . ."[37] In her Response to Defendant's Motion for Summary

Judgment, Plaintiff also alleged Defendant retaliated against her for her exercise of First

Amendment rights, and discriminated against her by allowing a hostile work environment.[38]

A. Hostile Work Environment

A Title VII Plaintiff must exhaust administrative remedies before bringing suit in federal

court.[39]  A plaintiff may file a civil action only after the EEOC issues a right-to-sue letter

---

[34]Doc. No. 2.

[35]Doc. No. 2.

[36]Doc. No. 2. Plaintiff filed her Complaint *pro se*. In paragraph 8 of her Complaint, Plaintiff had the choice to select the following types of discrimination: race, color, sex, religion, or national origin. Plaintiff selected none of the choices. Paragraph 8 also gave Plaintiff the choice to select that defendant had discriminated against her by failing to employ her, terminating her employment, or failing to promote her. Plaintiff did not select any of those choices. Rather, Plaintiff wrote in "retaliation." *Id*.

[37]Doc. No. 2.

[38]Doc. No. 83.

[39]42 U.S.C. § 2000(e)-5(f)(1).

following the investigation of a charge.[40] When the EEOC issues a right-to-sue letter, the scope of the civil action is limited to grievances in the charge.[41]  Permitting claims that are outside of the EEOC charge would undermine the EEOC's investigatory and conciliatory role, and deprive the charged party of notice.[42] The United States Supreme Court, however, has noted in an EEOC-related case that technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiated the process.[43] Still, "there is a difference between liberally reading a claim which 'lacks specificity' . . . and inventing . . . a claim which simply was not made."[44]

While claims like, and reasonably related to, allegations in an EEOC charge may, at times, be permitted to proceed, the Eighth Circuit has held that "'retaliation claims are not reasonably related to underlaying discrimination claims.'"[45] "A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'"[46] Although a hostile work environment is made up of repetitive conduct, rather than a

---

[40]*Id.*

[41]*Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998).

[42]*Kells v. Sinclair Buick-GMC Truck, Inc*., 210 F.3d 827, 836 (8th Cir. 2000); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994).

[43]*Love v. Pullman Co*., 404 U.S. 522, 527 (1972).

[44]*Cottrill v. MFA, Inc*. 443 F.3d 629, 635 (8th Cir. 2006) (citation omitted).

[45]*Wedow v. City of Kan. City*, 442 F.3d 661, 672 (8th Cir. 2006) (citing *Duncan v. Delta Consol. Indus., Inc*., 371 F.3d 1020, 1025 (8th Cir. 2004).

[46]*AMTRAK v. Morgan*, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)).

single act of discrimination, a plaintiff must still file an EEOC charge alleging hostile work environment after the alleged unlawful conduct occurred.[47]

In both her EEOC charge and her Complaint, Plaintiff alleged only retaliation. A hostile work environment claim is not reasonably related to Plaintiff's retaliation claim. Further, even at her deposition, Plaintiff confirmed that she was suing only on the basis of retaliation.[48] Plaintiff did not exhaust her administrative remedies in connection with her hostile work environment claim. Accordingly, summary judgment on this point is granted.

B. Retaliation for Exercising First Amendment Rights and For Complaining About Mistreatment of Disabled Employee.

It is unlawful for an employer to retaliate against an employee because she "opposed any practice made an unlawful employment practice" under Title VII or because she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[49]  Title VII makes it unlawful for an employer to discriminate against an employee based on race, color, religion, sex, or national origin.[50] A violation of First

---

[47]*Id.* at 116-117.

[48]Doc. No. 283, Ex. G, 10-11 at lines 12-4.

[49]42 U.S.C. § 2000e-3(a).

[50]42 U.S.C. § 2000e-2(a). That section reads:

(a) Employer practices. It shall be an unlawful employment practice for an employer--
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Amendment rights is not actionable under Title VII.[51] Discrimination against an individual with

a disability is not also not actionable under Title VII.[52] Because neither a violation of First

Amendment rights nor discrimination based on disability are actionable under Title VII, a claim

of retaliation in connection with those types of discrimination cannot be brought under Title VII.

Thus, summary judgment on this claim is granted.

> C. Retaliation for "Complaints of Other Employment, Program, and Ethics Violations."

When a plaintiff's Title VII claims of discrimination are based on indirect evidence, the

claims must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v.

Green.*[53]  Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima

facie* case of discrimination.[54]  To establish a *prima facie* case of retaliation, a Plaintiff in a Title

VII case must show each of the following elements: "(1) [s]he was engaged in statutorily

protected activity, (2) [s]he suffered adverse employment action, and (3) a causal connection

between the two exists."[55] Once the plaintiff meets this initial threshold, a presumption arises

that the employer "unlawfully discriminated against the employee."[56]  The burden of production

---

[51]See 42 U.S.C. § 2000e-2(a).

[52]*Id.*

[53]411 U.S. 792 (1973).

[54]*Id.*

[55]*Jackson v. St. Joseph Hospital*, 840 F.2d 1387, 1390 (8th Cir. 1988) (citing *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980)).

[56]*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

then shifts to the employer, who must show some legitimate, nondiscriminatory reason for the employment decision.[57]

Within the *McDonnell Douglas* framework, the court is not required to assess the credibility of the defendant's explanation of his actions.[58]  Once the defendant articulates a "legitimate, nondiscriminatory reason for its decision," the presumption raised by the *prima facie* case of discrimination is rebutted and "drops from the case."[59]   At all times in this analysis, the ultimate burden of production remains with the Plaintiff,[60] and once the defendant has met its burden, the Plaintiff must have "a fair opportunity to show that [the employer's] stated reason for [the employment decision] was in fact pretext,"[61] or that the proffered reasons for the employer's action were not true.[62]

Plaintiff was involved in a statutorily protected activity -- complaining about alleged behavior made unlawful under Title VII. Plaintiff also suffered an adverse employment action -- her employment was terminated. Thus, Plaintiff meets the first two elements in establishing a *prima facie* case of retaliation. Plaintiff cannot, however, show causation. The record does not support a conclusion that Plaintiff was terminated because she complained of alleged discriminatory practices.

---

[57]*McDonnell Douglas*, 411 U.S. at 802.

[58]*St. Mary's Honor*, 509 U.S. at 509 (1993).

[59]*Id.* at 507.

[60]*Id.*

[61]*McDonnell Douglas*, 411 U.S. at 804.

[62]*St. Mary's Honor*, 509 U.S. at 508.

After just two weeks in the CPE program, Plaintiff was already struggling with whether to stay in the program or not.[63]  Plaintiff did not embrace the program as it was administered by Chaplain Buck, and did not participate in the program as expected.[64]  Chaplain Buck suggested to Plaintiff after less than one month that Plaintiff may not be suited for the program, and asked her if she would like to leave the program.[65] Plaintiff, on October 2, 2005, wrote that her "experience with CPE has been less than appreciable."[66] Plaintiff wrote that she was "very disappointed with the structure of the seminar program."[67] Plaintiff explained about the program: "I take from this, '[d]on't throw the baby out with the bath water.' Perhaps CPE as a clinical training program has value and merit, but as I have experienced it, I have not found the right example to follow."[68]

Chaplain Buck and other program participants felt frustrated with Plaintiff's approach to and way of participation in the program.[69] Chaplain Buck described Plaintiff as "resistive and defiant," and pointed out that Plaintiff, as stated in her final evaluation, was not able to utilize the

---

[63]Doc. No. 83, Ex. G, 87 at 16-23..

[64]*Id.*, 54 at 3-22.

[65]Doc. No. 83, Ex. G, 90 at 15-19.

[66]Doc. No. 83, Ex. S.

[67]Doc. No. 72, Ex. A-3 at 1.

[68]Doc. No. 72, Ex. A-3 at 9.

[69]See Doc. No. 72, Exs. A, M, N.

12

clinical method of learning in the CPE program.[70] Other program participants allege that Plaintiff disrupted the program, and was confrontational and defiant.[71] The program handbook set out that a CPE student can be dismissed for being disruptive to the clinical program.[72] Defendant maintains Plaintiff was dismissed because she was not a good fit for the program.[73] Plaintiff offers no evidence beyond her own allegations to support her allegation that Defendant retaliated against her.

Even if Plaintiff could show a causal connection, her retaliation claim would fail because she cannot show that Defendant's explanation of its behavior was a pretext for discrimination.

IV. CONCLUSION

Viewed in the light most favorable to the non- moving party, no genuine issue of material fact exists to support a conclusion that Defendant retaliated against Plaintiff in violation of Title VII. Accordingly, Defendant's Motion is GRANTED and this case is DISMISSED.

IT IS SO ORDERED this 16th day of April, 2008.


/s/ Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[70]Doc. No. 72, Ex. A-4 at 00199.

[71]Doc. No. 72, Exs. I, J, M, N.

[72]Doc. No. 83, Ex. R at 19.

[73]Doc. No. 72.

13